UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMAS BRADFORD WATERS, ) | Civil Action No.: 4:15-cv-4143-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | |
| LAKE CITY POLICE OFC. JOHN ) | **REPORT AND RECOMMENDATION** |
| STEWART, LAKE CITY POLICE OFC. ) | **AND ORDER** |
| MARK STRICKLAND, LAKE CITY ) | |
| POLICE OFC. SGT. ANTHONY ) | |
| BACKHUSS, LAKE CITY POLICE OFC. ) | |
| JODY COOPER, ATF AGENT ALAN ) | |
| C. STRICKLAND, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.  INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983. Defendants previously filed a Motion for Summary Judgment (ECF No. 140). In an Order (ECF No. 184) adopting in part and as modified a Report and Recommendation (ECF No. 172) from the undersigned, the District Judge granted Defendants' Motion as to Plaintiff's claims of unlawful seizure and civil conspiracy. The District Judge declined to adopt the Report and Recommendation as to Plaintiff's excessive force claim and allowed Defendants Strickland and Stewart to file a supplemental motion for summary judgment as to that claim.

On November 12, 2018, Defendants Strickland and Stewart filed their Supplemental Motion for Summary Judgment (ECF No. 206). Because Plaintiff is proceeding pro se, he was advised by an Order (ECF No. 141) pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint. Following an

extension of time, Plaintiff filed his Response (ECF No. 222). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

## II. MOTION TO COMPEL

As an initial matter, the court notes that, throughout Plaintiff's response to the supplemental motion for summary judgment he argues that he is hindered from presenting sufficient evidence because Defendants have failed to comply with the undersigned's order granting a previous motion to compel and compelling them to produce certain evidence. Plaintiff has also filed another Motion to Compel (ECF No. 192), moving the court to compel Defendants to respond to the discovery requests. Plaintiff asserts that the following discovery requests are still at issue:

> 2. All documented information handwritten or typed into any system, that is in the possession of Lake City Police Department, that was done or entered by dispatcher "Kimberly Scoot" who worked as the dispatcher on 3/12/15. This information would include the name and address and all other information given by the 911 caller on 3/12/15. Case # 15-03-0323.
>
> 4. All log book or computer documented information done by dispatcher "Kimberly Scoot" on 3/12/15 revealing the names and place of employment of the two F.C.E.M.S. workers that came to the Lake City Police Department to treat the Plaintiff after he was tased on 3/12/15.
>
> 7. Any and all audio/video recordings from the Lake City Police Department from 3/12/15. This would include the Sally Port footage from L.C.P.D. 3/12/15 on or about 7:30 p.m. Also the booking area footage from the same date and time.
>
> 9. Any and all audio/video records from the electronic stun devices and or "tasers" with a serial number of "P3-022495."

As to each of these requests, Defendants responded that no such documents or information exist or they no longer have them. The court entered an Order (ECF No. 115) directing Defendants to provide an affidavit or other sworn statement attesting to the veracity of these discovery requests and

directing them to produce documents responsive to other discovery requests that are no longer at issue. Although Defendants provided an affidavit attesting to the veracity of some of their discovery responses, it did not address all of the responses compelled by the court. See Miles Aff. (ECF No. 131-1). In response to the most recent motion to compel, Defendants provided a Supplemental Affidavit of Trey Miles, who stated

> 1. I, Trey Miles, am employed at the Lake City Police Department as a Lieutenant in the Administration/Training Division performing duties as an Assistant Terminal Agency Coordinator.
>
> 2. I assisted defense counsel, Lisa A. Thomas, in answering all questions asked of the Defendant by the Plaintiff through discovery.
>
> 3. All of the answers given by the Defendants to all the Plaintiff's discovery questions are true and correct to the best of my knowledge and I attest to the veracity of all responses provided.

Miles Supp. Aff. (ECF No. 205-1). Accordingly, Plaintiff's Motion to Compel (ECF No. 192) is **MOOT**.[1]

### III. FACTS

This action arises from Plaintiff's arrest on March 12, 2015. On that date, Corporal Mark Strickland and Narcotics Investigator John Stewart, both with the Lake City Police Department, were dispatched to South Morris Street where a caller stated "there were two black males in the middle of the road fighting and that one that did not have on a shirt on had a gun and was headed to 439 South Morris Street (Coker Mobile Home Park)." Incident Report (ECF No. 140-2). Plaintiff asserts in his Complaint that he was unarmed. It was near dark when Strickland and Stewart arrived on the scene, separately but at approximately the same time. Stewart Aff. ¶¶ 3-4 (ECF No. 140-3).

---

[1] Likewise, Plaintiff's other motions relating to this discovery issue (ECF Nos. 175, 183) are **MOOT** as well.

As Stewart exited his vehicle and turned on his flashlight, he immediately saw a gun sticking out of the back pocket of a man fitting the description from dispatch. Stewart Aff. ¶ 4. The Incident Report, prepared by Strickland, indicates "we saw the suspect walk back behind a mobile home after he stuck the pistol in his right rear pocket." Incident Report. Strickland later clarified in his testimony during Plaintiff's criminal trial and in his affidavit that he did not personally observe the gun in Plaintiff's back pocket at that time but Stewart noticed it and yelled "gun!" to alert Strickland. Strickland Aff. ¶ 4 (ECF No. 140-4); Strickland Trial Transcript (ECF No. 168-3). Stewart testified that when he shined his flashlight on Plaintiff he "immediately saw the subject had a gun or something that appeared to be a gun sticking out of his back pocket." Suppression Hearing Trans. at 12, 33.[2] Stewart and Strickland recognized Plaintiff and knew that he was a convicted felon and not allowed to possess a firearm. Stewart Aff. ¶ 5; Strickland Aff. ¶ 4.

Along with their supplemental motion, Defendants submitted a copy of the dash cam video from Strickland's vehicle. None of the events at issue in this action take place within the view of the camera. The camera does, however, capture audio of the incident, although at times it is very faint and difficult to hear. In his response to the supplemental motion, Plaintiff repeatedly states that the dash cam video makes certain factual assertions "clear." For example, with respect to Strickland's averment that Stewart shouted "gun!" to alert Strickland that Plaintiff was in possession of a gun, Plaintiff states "[a]fter review the cop car in-dash it is clear that this never took place." Pl. Resp. p. 1 (ECF No. 222). Because the sound at the beginning of the interaction between Plaintiff and Stewart and Strickland is extremely faint, the video does not make this factual assertion any

---

[2]In his response to the supplemental motion, Plaintiff asks the court to take judicial notice of the transcript from the suppression hearing in his criminal action, U.S. v. Waters, No. 15-cr-158. The transcript can be found at ECF No. 96 of the criminal action.

more or less clear. However, portions of the video do lend credence to the factual assertions of both Plaintiff and Defendants and, thus, will be discussed below as relevant.

Defendants assert that Plaintiff put his hands up at first but then moved his right hand down next to the pocket where the gun was located.[3] Incident Report; Strickland Aff. ¶ 5; Use of Force Form (ECF No. 140-5); Trial Trans. at 71.[4] Plaintiff asserts that he never reached for his gun and points to the video, in which you can hear Stewart say to Plaintiff "If you'd reached for it, you'd be dead." Dash Cam Video timestamp 3:15; Trial Trans. at 162 ("You've heard it but, once again, he said: You've got that gun, you blanket[5] tough, and you didn't want to get to the ground; if you reach for it, you be dead."). Stewart avers that he drew his weapon and shouted for Plaintiff to get on the ground several times. Stewart Aff. ¶ 4. In the video, Stewart is heard repeatedly shouting "get on the ground" or some variation thereof with rising intensity in his tone. Dash Cam Video timestamp 1:50-2:06. A witness at the incident testified during a suppression hearing in Plaintiff's criminal trial that Plaintiff did not get on the ground but "was just standing there trying to figure out what was going on." Suppression Hearing Trans. at 70. Following Plaintiff's refusal to obey Stewart's directives, Stewart grabbed him. Stewart Aff. ¶ 4. Plaintiff then swung his arm and knocked Stewart's hand off of his shoulder. Incident Report (Supplemental). During this struggle both

---

[3]Plaintiff continues to argue in his response to Defendants' supplemental motion that Defendants lacked probable cause to stop him. However, as stated above, the district judge has already ruled on that issue and it is no longer before the court.

[4]In their supplemental motion, Defendants ask the court to take judicial notice of the trial transcript from Plaintiff's criminal action, U.S. v. Waters, No. 15-cr-158. The transcript can be found at ECF Nos. 142, 143 of the criminal action.

[5]From the dash cam video, Stewart appears to be saying "you think you're tough." Dash Cam Video timestamp 3:15.

Stewart and Plaintiff went to the ground. Trial Trans. at 72. The witness testified that he saw the officer grab Plaintiff to try and handcuff him and the two went down to the ground, but he could not recall if there was any "tussling" or what happened once they got to the ground. Suppression Hearing Trans. at 70-71. Strickland testified that he observed Plaintiff reach toward his back pocket for what he believed was his gun[6] and so he tased Plaintiff with one full five-second burst followed by two bursts that lasted maybe a second or two. Trial Trans. at 72, 78; Stewart Aff. ¶ 4; Incident Report (Supplemental); Strickland Aff. ¶ 5; Use of Force Form. Plaintiff also asserts that he was shot with the taser four times: once in the back, once in the back of his right hand, once in the back of his left hand, and once in the back of his right leg. Compl. p. 3 of 13. He attached pictures to his complaint showing injuries only in three places: a thumb, a finger, and an area unidentifiable from the picture. See Compl. Attachments. As Plaintiff was being tased, Stewart removed the weapon from Plaintiff's back pocket and threw it to the side. Trial Trans. at 73; Stewart Affidavit ¶ 4; Strickland Aff. ¶ 5.

Plaintiff was told several times while he was on the ground to put his hands behind his back, but the Plaintiff refused. Incident Report (Supplemental). Stewart was able to cuff one of his hands when the taser leads broke.[7] Stewart Aff. ¶ 4; Incident Report (Supplemental); Suppression Hearing Trans. at 13. Stewart had to fight with Plaintiff to get his other hand cuffed. Incident Report (Supplemental); Suppression Hearing Trans. at 13. Stewart ended up cuffing Plaintiff in the front because it was the only way he could do it. Trial Transcript at 48.

---

[6]Strickland testified that he did not actually see the gun until Stewart pulled it out of Plaintiff's back pocket but Stewart had told him Plaintiff had a firearm. Trial Trans. at 78.

[7]Strickland testified that Plaintiff either pulled the taser leads out or they came out during the struggle. Strickland Cross Transcript (ECF No. 168-11).

Once he got both hands cuffed, Stewart lead Plaintiff to the car where Plaintiff became belligerent and started cursing. Stewart Aff. ¶ 4; Dash Cam Video timestamp 3:19. Plaintiff repeatedly mocks Stewart by saying "a cracker saved you." Dash Cam Video timestamp 3:19. Stewart can be heard telling Plaintiff repeatedly to get in the car. Dash Cam Video timestamp 3:25-3:35. As Plaintiff refused to get into the car, Stewart grabbed Strickland's taser and got ready to touch-tase Plaintiff, but Plaintiff fell into the car head first and began kicking his feet. Stewart Aff. ¶ 4; Trial Transcript at 48; Suppression Hearing Trans. at 14. As Stewart was attempting to touch-tase Plaintiff, Plaintiff grabbed the taser from Stewart's hand and tried to turn it towards Stewart. Plaintiff can be heard stating "I've got your gun." Dash Cam Video timestamp 3:50; Stewart Aff. ¶ 4. Stewart pulled his handgun and states "you think so?," and Plaintiff says "no" and returned the taser to Stewart. Dash Cam Video timestamp 3:51-3:52; Stewart Aff. ¶ 4. Additional struggling can then be heard. Dash Cam Video timestamp 5:06.

Strickland transported Plaintiff to the detention center in his vehicle. Strickland Supp. Aff. ¶ 3 (ECF No. 206-10). Strickland avers that during the drive he and Plaintiff talked calmly and Plaintiff gave him no problems. Strickland Supp. Aff. ¶ 3. Once they arrived at the detention center, Stewart assisted Strickland in getting Plaintiff out of the car and into the building. Strickland Supp. Aff. ¶ 3. Plaintiff again got "verbal" with Stewart, frequently taunting him. Strickland Supp. Aff. ¶ 3. Plaintiff alleges in his verified complaint that after being transported by Strickland to jail, Defendant "Stewart came to the car and tryed [sic] to pull me out by my cuffs. When I pull myself backwards, he [Stewart] then pulled out his taser and shot me in the back of my leg." Ver. Compl. at pp. 4–5. During a suppression hearing in Plaintiff's related criminal action, Stewart testified as follows:

> A. At the station, he was belligerent again. He was cursing, saying all sorts of things.
> Q. Were you finally able to get him into the jail?
> A. Yes. Well, under the carport, he refused to come out of the car. He was again cursing, he was kicking his feet. It took a few minutes for us to get him out of the car. When we got him out of the car and took him inside to the booking area and got him down in the booking area, he again became belligerent. He was cursing and using all sorts of profanity, racial slurs, everything.

Suppression Hearing Trans. at 21; see also Trial Trans. at 74. Nevertheless, Stewart avers that despite Plaintiff refusing to get out the car, refusing directives, and resisting at the jail, they were able to extract him from the vehicle without using force because he was cuffed. Stewart Supp. Aff. ¶ 5 (ECF No. 206-9). Strickland avers that although Plaintiff may have initially jerked away as he and Stewart led him into the building, they were able to take control of the situation, and no force was used. Strickland Supp. Aff. ¶ 4. Stewart states in any event they would not need to tase Plaintiff to bring him under control at the detention center because they could call more officers to assist them if necessary. Stewart Supp. Aff. ¶ 5.

In addition, Strickland and Stewart aver that Strickland had the only taser at the scene, and it was in his possession when he left the scene. Strickland Supp. Aff. ¶¶ 5-6; Stewart Supp. Aff. ¶ 3; Suppression Hearing Trans. at 14. Due to low inventory of tasers at the time of this incident, investigators such as Stewart were not issued tasers. Miles Aff. ¶ 3 (ECF No. 131-1). Tasers were only issued to patrol units. Miles Aff. ¶ 3. Strickland avers that Stewart did not ask for the taser nor did he give him the taser at the detention center. Strickland Supp. Aff. ¶ 6. Further, both Strickland and Stewart state that the taser would not have worked at the detention center because during the initial struggle to handcuff Plaintiff, one of the prongs pulled away and the taser will no longer work

once that occurs until a new cartridge is installed.[8] Stewart Supp. Aff. ¶ 3; Strickland Supp. Aff. ¶ 5; Suppression Hearing Trans. at 15, 48. Only one cartridge was issued to each officer carrying a taser, so neither Strickland nor Stewart could have installed a new cartridge to make the taser useable at the detention center. Stewart Supp. Aff. ¶ 3; Strickland Supp. Aff. ¶ 5.

Plaintiff was charged with and subsequently convicted of possessing a firearm as a felon and is currently serving his sentence within the Federal Bureau of Prisons. See U.S. v. Waters, 4:15-cr-158; Stewart Aff. ¶ 6; Judgment (ECF No. 140-7).

## IV. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla,

---

[8]Stewart asserts that Plaintiff also was not "drive-stunned," at the detention center, nor does Plaintiff allege that he was. Stewart Supp. Aff. ¶ 4. See De Boise v. Taser Int'l, Inc., 760 F.3d 892, 896 n.5 (8th Cir. 2014) ("Deploying the taser in drive stun mode means that an officer removes the cartridge from the taser and applies the taser so as to make direct contact with the subject's body. When the taser is in drive stun mode, it only causes discomfort and does not incapacitate the subject.").

upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

V.    DISCUSSION

As stated above, the only issues left in this case are Plaintiff's claims of excessive force during his arrest and then after their arrival at the detention center. Protection against force used during arrest is provided by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness"

standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of force is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting seizure or attempting to evade seizure by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). Other relevant factors include the extent of the plaintiff's injury and any effort made by the officer to temper or to limit the amount of force used. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (noting there is no exclusive list and such factors were listed "only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force"). "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir.1996)), recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

### A.   Use of Force During Arrest

Defendants were dispatched to Plaintiff's location to investigate a report of a fight between two individuals, one of whom had a gun. Thus, at the time of Defendants' arrival on the scene, they had information of a potentially violent situation. Further, it is undisputed that Stewart observed a gun in Plaintiff's possession and both Stewart and Strickland recognized Plaintiff as

a convicted felon from their previous interactions with him. In his affidavit Strickland stated that "we've had to fight [Plaintiff] every time we've dealt with him." Strickland Aff. ¶ 5. Plaintiff argues that neither Stewart nor Strickland ever stated in any report or affidavit that they felt threatened by Plaintiff. However, during the suppression hearing, Stewart testified that he was familiar with Plaintiff, and knew that he was a gang member and was violent and, thus, wanted to be cautious when dealing with him. Suppression Hearing Trans. at 11. While a dispute of fact exists as to whether Plaintiff reached for his gun when Stewart and Strickland first approached him, the audio from the dash cam video reveals that Stewart repeatedly directed Plaintiff to get on the ground, and Plaintiff states in his response that "I did not get on the ground when the police first asked me to." Pl. Resp. 7 of 14 (ECF No. 222).

In addition, the facts reveal that Plaintiff actively struggled with Stewart as Stewart attempted to handcuff him and that Plaintiff had a gun in his possession during this struggle. Plaintiff states in his Response that he never tried to flee and did not resist arrest because "I never committed a crime to be placed under arrest and . . . I can't actively resist arrest if I was never placed under arrest." Pl. Resp. p. 13. However, as stated above, after Plaintiff and Stewart reached the patrol car, Plaintiff repeatedly mocks Stewart by telling him "a cracker saved you," which corroborates Stewart's and Strickland's testimony that Plaintiff and Stewart were struggling on the ground and Strickland had to use his taser to assist Stewart in subduing and handcuffing him.

Further, although Plaintiff makes much of the fact that Stewart is never heard on the dash cam video yelling to Strickland that he had a gun, the record reflects that the Lake City Police Department received a call that a person fitting Plaintiff's description was in possession of a gun. Additionally, as noted by the District Judge, Plaintiff was convicted of being a felon in possession

of a firearm and, thus, the court cannot accept as true his allegation that he was unarmed. See Young v. Burke, No. 2:11-cv-00837-SB, 2012 WL 12898748, at *4 (D.S.C. Aug. 15, 2012). Strickland testified that at the time he used his taser, Plaintiff and Stewart were on the ground and Stewart was underneath Plaintiff. Strickland Cross Transcript (Ex. K to Pl. Resp.). Based on these facts, the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether Plaintiff was actively resisting seizure all weigh in favor of Defendants and a finding that the force used was reasonable.

"To properly consider the reasonableness of the force employed [the court] must 'view it in full context, with an eye toward the proportionality of the force in light of all the circumstances. Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (citing Waterman v. Batton, 393 F.3d 471, 481 (4th Cir.2005)). "[T]asers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 903 (4th Cir.) (emphasis in original), cert. denied sub nom. Vill. of Pinehurst, N.C. v. Estate of Armstrong, 137 S. Ct. 61, 196 L. Ed. 2d 32 (2016); see also Sawyer v. Asbury, 537 F. App'x 283, 292 (4th Cir. 2013) (citation omitted) ("A law enforcement officer is justified in the use of any force which he reasonably believes to be necessary to effect arrest or hold someone in custody and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm."). Plaintiff fails to create an issue of fact on his excessive force claim in light of all the circumstances present here, where Defendants responded to a report of a physical altercation between two people and one had a gun, observed that Plaintiff had a gun in his possession,

recognized Plaintiff as a convicted felon, knew of his criminal history (which includes violent crimes, see Arrest Record (Ex. to Def. Motion)), and knew of his propensity to put up a fight in his encounters with police. In addition, Plaintiff struggled with Stewart on the ground as Stewart attempted to place him in handcuffs. At the time of the struggle, Plaintiff still had possession of the hand gun and was at an advantage over Stewart because Stewart was underneath him. Given the facts known to Stewart and Strickland at the time they approached Plaintiff, the struggle that ensued between Plaintiff and Stewart on the ground, and the fact that Plaintiff still had possession of a gun while he was struggling with Stewart and resisting arrest, a reasonable officer would perceive some immediate danger that could be mitigated by using the taser. Indeed, once Strickland deployed his taser, Stewart was able to get at least one of Plaintiff's hands cuffed and retrieve the gun from Plaintiff's possession. Although Plaintiff continued to struggle, the threat of danger had been mitigated by the use of the taser to retrieve the gun. Plaintiff has failed to present sufficient evidence to show that Strickland's use of the taser to bring Plaintiff into compliance during his arrest was objectively unreasonable.

The cases cited by Plaintiff are distinguishable. In Brown v. City of Golden Valley, 574 F.3d 491, 497 (8th Cir. 2009) the Eighth Circuit held that an issue of fact existed where an officer used excessive force when he used a taser on the passenger of a vehicle who refused the officer's directives to get off of the phone with 911 where the crime at issue was violation of the state's open bottle law and the passenger was not resisting arrest or attempting to flee. The court found that the passenger posed at most a minimal safety threat. Id. Unlike the present case, the passenger was not in possession of a weapon. Here, Stewart observed a gun in Plaintiff's possession, and both Stewart and Strickland were aware of Plaintiff's violent tendencies. Plaintiff

also cites to the dissent in U.S. v. Robinson, 846 F.3d 694 (4th Cir. 2017), though the holding in the case actually supports Defendants' arguments rather than Plaintiff's. There, the Fourth Circuit in a plurality opinion held that "an officer who makes a lawful traffic stop and who has a reasonable suspicion that one of the automobile's occupants is armed may frisk that individual." Id. at 696.[9] The dissent opined the fact that an individual is armed does not give rise to a reasonable suspicion that the individual is also dangerous such that a Terry frisk is proper. Id. at 709. Even under the dissent's opinion as relied upon by Plaintiff, the officers in the present case had knowledge independent of their suspicion that Plaintiff was carrying a gun that Plaintiff could be dangerous, namely their previous encounters with and the reputation of Plaintiff. Thus, Robinson is of no help to Plaintiff.

 Finally, Defendants argue in their supplemental motion that the present case is distinguishable from Young v. Burke, No. 2:11-cv-00837-SB, 2012 WL12898748, at 4 (D.S.C. Aug. 15, 2012), which the District Judge cited in his Order remanding the case for additional briefing and further development of the record. In Young, the plaintiff alleged in his verified complaint that, upon his refusal to put his hands on the hood of the car because it was hot, "Officer Burke beg[a]n to draw his weapon and pointed it at the plaintiff['s] head[,] which made the plaintiff duck for cover. Upon ducking, Officer Engle(s) started beating the plaintiff with a metal rod with such force that it knock[ed] the plaintiff to the ground. The plaintiff jump[ed] up and tried to get away from the aggressive officer (Engles) and was then football tackle[d] by Officer Cole. Once on the ground Officer Mulkey place[d] her knees on the plaintiff['s] head while Officer M.

---

[9]Although this case was decided in the context of a Fourth Amendment seizure question, the reasoning is still instructive.

Burke took his turn to beat the plaintiff with his metal rod." Id. at *1. The court held that, viewing the facts in the light most favorable to the plaintiff, "the record before the Court nevertheless contains competing factual claims sufficient to create genuine issues of material fact as to the quantity of force used by the officers as well as the circumstances under which the force was used." Id. at *4.

However, in the present case, after further briefing and submission of evidence, even considering the facts in the light most favorable to the Plaintiff, the evidence is insufficient to withstand summary judgment. The undisputed facts show that Defendants were responding to a report of a fight where one participant had a weapon, knew of Plaintiff and his violent tendencies and reputation, and Stewart saw a gun in his possession when they arrived at the scene. It is also undisputed that Plaintiff failed to put his hands up when first ordered by Stewart, struggled with Stewart when he tried to put handcuffs on him, and was still in possession of the gun during the struggle on the ground with Stewart. Accordingly, summary judgment is appropriate on this claim.

### B. Use of Force at Detention Center

Plaintiff asserts that, once they arrived at the detention center following his arrest, Stewart attempted to remove Plaintiff from the vehicle by pulling him out by his handcuffs and when Plaintiff pulled back, Stewart "pulled out his taser and shot [him] in the back of the leg." Complaint 4-5. Plaintiff also states in his response that "the one taser marking in the back of my leg comes from Officer Stewart at the police department while I was cuffed in the police car." Pl. Resp. p. 3 of 14 (ECF No. 22). However, during the suppression hearing in his criminal trial, Plaintiff testified under oath that he was shot with the taser on the back of the leg during the arrest, as he was on the ground: "I get on the ground. Next thing I know I get tased everywhere. I got shot on the right

thumb, I got shot in the back, I got shot on the back of the leg, four different times." Suppression Hearing Trans. at 77. Thus, Plaintiff's statements in the present case are inconsistent with his previous, sworn statements made during his criminal case.

Stewart and Strickland deny that Stewart tased Plaintiff at the detention center. Although Plaintiff was belligerent and they had to struggle a bit to get him out of the vehicle, they were able to do so without using force because he was fully cuffed at that time. They aver that only Strickland had a taser, and Stewart never had possession of it or asked for it at the detention center. Defendants also aver that the taser would not have worked anyway because one of the leads broke when it was used during the arrest and the taser does not work after a lead breaks, and Strickland was only issued one cartridge, as was the rule within the department, so he could not have replaced it with a new cartridge to use again at the detention center.

Rule 56 provides that once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e). In their support of their supplemental motion for summary judgment, Defendants aver that Stewart did not tase Plaintiff at the detention center. In addition, they present evidence that Stewart <u>could not</u> have tased Plaintiff because he did not have a taser and Strickland's taser would not work after being used during the arrest.[10] Plaintiff's statement that Stewart tased

---

[10] As stated above, as Stewart was attempting to place Plaintiff into the vehicle at the scene of the incident, after the taser was initially used by Strickland and the lead broke, Stewart grabbed Strickland's taser, thinking he would have to "touch-tase," Plaintiff, or use the taser in "drive-stun mode," to get Plaintiff into the car. "In drive stun mode, the operator presses the Taser to a subject's body and then pulls the trigger to emit a current. . . . The Ninth Circuit has classified . . .drive stun as less than intermediate force. <u>Thompson v. City of Danville, Va.</u>, No. 4:10CV00012, 2011 WL 2174536, at *2 (W.D. Va. June 3, 2011), aff'd, 457 F. App'x 221 (4th

him in his leg at the detention center is inconsistent with his prior sworn testimony that he was tased in the back of the leg at the original scene of the incident and, thus, is insufficient to create a dispute of fact sufficient to withstand summary judgment. He does not present evidence sufficient to create a dispute of fact that Stewart did not have a taser, did not use Strickland's taser, or that Strickland's taser could not have been used at the detention center.

Nevertheless, even assuming that an issue of fact exists as to whether Stewart used the taser, "the fact that Plaintiff was in handcuffs does not make [a] use of force per se objectively unreasonable." Sparks v. Henderson Cty. Sheriffs Office, No. 1:16-CV-9-FDW, 2018 WL 1413186, at *8 (W.D.N.C. Mar. 21, 2018) (citing Beale v. Madigan, No. 5:11-CT-3244-F, 2014 WL 12513870, at *5 (E.D.N.C. Aug. 26, 2014) (unpublished) (holding that, although the plaintiff was handcuffed, the use of force was reasonable under the Fourteenth Amendment because "Plaintiff was in a detention center and swinging his body wildly in an attempt to disobey instructions"), affirmed after remand in light of Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), 668 Fed. Appx. 448 (4th Cir. 2016); Pashova v. Geist, No. 1:09cv340-JD, 2012 WL 1074072, at *12 (N.D. Ind. Mar. 29, 2012) (holding that the use of a taser on an arrestee in a restraint chair was objectively reasonable under the Fourth Amendment because, although the plaintiff was not resisting arrest or attempting to evade arrest by flight, she was indisputably interfering with the officers' execution of their duties); Stormer v. Koon, No. 1:08cv813, 2010 WL 1257592, at *6-7 (S.D. Ohio Mar. 30, 2010) (the defendants' use of knee strikes and fist strikes were reasonable under the Fourteenth Amendment

---

Cir. 2011) (internal citations and quotations omitted). A taser can be used in drive-stun mode without a cartridge. See De Boise v. Taser Int'l, Inc., 760 F.3d 892, 896 n.5 (8th Cir. 2014). Defendants assert in their supplemental motion that "Plaintiff was not drive-stunned, nor does he allege so at the Detention Center." Suppl. Mot. for S.J. p. 4. This is undisputed by Plaintiff.

even though the plaintiff was handcuffed and lying down in cell where the plaintiff kicked defendants and spit blood at them because "the punches were inflicted in a good faith effort to make Plaintiff stop resisting and to make him stop spitting blood at the officers"). Stewart testified at the suppression hearing that Plaintiff refused to come out of the car and was cursing and kicking his feet. Plaintiff does not dispute that he was belligerent as Stewart attempted to remove him from the vehicle at the detention center and refused to get out. He states in his complaint that when Stewart attempted to remove him from the vehicle by his cuffs, he (Plaintiff) pulled backwards, thus resisting Stewart's efforts to remove him from the vehicle.

As such, viewing the evidence in the light most favorable Plaintiff, summary judgment is appropriate as to this claim of excessive force as well.

## VI. CONCLUSION

For the reasons discussed above, it is ordered that Plaintiff's Motion to Compel (ECF No. 192) is **MOOT**.[11]

Further, it is recommended that Defendants' Supplemental Motion for Summary Judgment (ECF No. 206) be granted and the remaining claims in this case be dismissed with prejudice.

    s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 29, 2019
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[11] His related motions (ECF Nos. 175, 183) are moot as well.