UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Bradford Waters, | ) | Civil Action No.: 4:15-cv-04143-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Lake City Police Officer John Stewart and | ) | |
| Lake City Police Officer Mark Strickland, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Thomas Bradford Waters brought this action pursuant to 42 U.S.C. § 1983 asserting claims relating to his arrest and detention on March 12, 2015. Before filing this action, Plaintiff had been indicted, tried, and convicted in this District for being a felon in possession of a firearm; his conviction stemmed from the March 2015 arrest. The Court issued an order granting Defendants' motion for summary judgment as to Plaintiff's unlawful seizure and civil conspiracy claims, reserving a ruling on his excessive force claims, and permitting the two remaining Defendants—Lake City Police Officers John Stewart and Mark Strickland—to supplement their motion as to the excessive force claims. *See* ECF No. 184. Defendants then filed a supplemental motion with additional argument and evidence. *See* ECF No. 206. Plaintiff filed a response in opposition. *See* ECF No. 222.

The matter is now before the Court for consideration of Plaintiff's objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Thomas E. Rogers, III, who recommends granting Defendants' supplemental motion for summary judgment and dismissing the excessive force claims with prejudice.[1] *See* ECF Nos. 228 & 232.

---

[1] The Magistrate Judge issued the R & R in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.).

**Legal Standards**

I. **Review of the R & R**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

II. **Summary Judgment**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

**Discussion**

As explained in the Court's two prior orders,[2] Plaintiff's only remaining claims are his excessive force claims and the only remaining defendants are John Stewart and Mark Strickland (collectively, "Defendants"), the two Lake City police officers who arrested him on the evening of March 12, 2015. *See* ECF Nos. 184 & 220. Specifically, as the Magistrate Judge explains, "the only issues left in this case are Plaintiff's claims of excessive force during [1] his arrest and [2] then after their arrival at the detention center." R & R [ECF No. 228] at p. 10. The Magistrate Judge recommends granting Defendants' supplemental motion for summary judgment as to both excessive force claims. *Id.* at pp. 10–19. Plaintiff has filed objections to the R & R. *See* Pl.'s Objs. [ECF No. 232].[3] Defendants have not filed a response to Plaintiff's objections.

Again, Plaintiff alleges two instances of excessive force: (1) tasing and handcuffing at the arrest scene and (2) tasing at the jail. *See* Verified Complaint [ECF No. 1]. The Court will address each claim below in conjunction with Plaintiff's objections.

**I.      First Claim: Use of Force at Arrest Scene**

    **A.      Applicable Law**

The Fourth Amendment prohibition against unreasonable seizures bars the use of excessive force on free citizens, whether it be "in the course of an arrest, investigatory stop, or other 'seizure.'"

---

[2] The Court previously summarized the procedural and factual history of this case and Plaintiff's criminal case, including the evidence presented at trial regarding his arrest as summarized by the Fourth Circuit in his direct appeal. *See* ECF No. 184 at pp. 3–5 (citing *United States v. Waters*, 697 F. App'x 760 (4th Cir. 2017)).

[3] In the same document as the R & R, the Magistrate Judge also issued an order ruling that Plaintiff's discovery-related motions were moot. *See* R & R at pp. 2–3, 19, & nn.1, 11. Plaintiff mentions these rulings in his objections, but he does not appear to specifically object to them. *See* Pl.'s Objs. at pp. 13–14. To the extent he does object to these rulings (involving nondispositive discovery matters), the Court finds the Magistrate Judge's rulings are not clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The Court also directs Plaintiff's attention to its prior order addressing similar discovery issues. *See* ECF No. 220 at pp. 5–6.

*Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018). The Court must apply an "objective reasonableness" standard in determining whether an officer has used excessive force when seizing a free citizen. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001).

This objective inquiry is based on the totality of the circumstances, and it requires an examination of the officer's actions in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation—subjective motives, intent, and/or propensities are irrelevant. *Dolgos*, 884 F.3d 179. The Court "must give careful attention to the facts and circumstances of each particular case, including three factors in particular: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal quotation marks omitted) ("*Graham* factors"). "Evaluating the reasonableness of the officer's actions requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (internal quotation marks omitted).

### B. Analysis

Plaintiff and Defendants agree that Plaintiff was tased and handcuffed at the arrest scene. However, the parties disagree as to certain facts about the tasing and handcuffing.

Plaintiff's version of the facts is located in his verified complaint[4] and testimony at the suppression hearing in his criminal case.[5] *See* Ver. Compl. at p. 3; *United States v. Waters*, No. 4:15-cr-00158-BHH-1, Suppression Transcript [ECF No. 96] at pp. 75–82 (D.S.C.). Plaintiff alleges he was standing in his yard when Stewart and Strickland jumped out their cars, ran up to him with their guns pointed at him, and told him to get on the ground. Ver. Compl. at p. 3; Suppr. Tr. at p. 76–77, 80. He claims both Defendants "shot me multiple times all from the back while I was face down on the ground. I was hit 4 times with an electronic stun gun/taser. This was done while I was unarmed[,] on the ground[,] and not being a threat to either officer." Ver. Compl. at p. 3. Plaintiff asserts he was tased "once in the back, once in the back of my right hand, once in the back of my left hand, and once in the back of my right leg." *Id.* He further alleges that "Stewart also put the handcuffs on super tight cutting my wrist all up, and makeing [*sic*] me lose feeling in both of my hands for hours." *Id.* Plaintiff has also submitted photographs of his alleged injuries. *See* ECF Nos. 1-1 & 15-1.[6]

Defendants' version of the facts is located in their summary judgment affidavits, testimony at the suppression hearing, and testimony at Plaintiff's criminal trial. *See* Stewart Affidavit [ECF No. 206-3]; Strickland Affidavit [ECF No. 206-4]; Suppr. Tr. at pp. 3–64; *United States v. Waters*, No.

---

[4] Plaintiff's verified complaint serves as an opposing affidavit for summary judgment purposes. *See Carter v. Fleming*, 879 F.3d 132, 141 n.8 (4th Cir. 2018) ("'[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (alteration in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991))).

[5] The Court takes judicial notice of the court records from Plaintiff's criminal case. *See* Fed. R. Evid. 201(c)(1), (d) ("The court . . . may take judicial notice on its own . . . [and] may take judicial notice at any stage of the proceeding."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

[6] Plaintiff makes additional factual allegations in his responses in opposition to Defendants' original and supplemental motions for summary judgment and in his objections to the Magistrate Judge's R & Rs and orders, but such unsworn assertions do not constitute evidence sufficient to withstand summary judgment. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (holding "unsworn argument does not constitute evidence" for purposes of summary judgment).

4:15-cr-00158-BHH-1, Trial Transcript [ECF No. 142] at pp. 38–85.[7] They assert Plaintiff had a gun, refused to get on the ground or raise his hands, resisted Stewart's efforts to handcuff him, reached for a gun in his back pocket during this struggle, and was tased three times by Strickland, as summarized by Defendants' testimony in Plaintiff's criminal trial:[8]

> When Stewart and Strickland arrived at the Coker Park, they saw a man—who turned out to be Waters—fitting the description provided by the tipster. Officer Stewart flashed a light on Waters, at which point Stewart "immediately saw something bulging out of [Waters's] right back pocket that appeared to be the handle of a gun." Stewart promptly drew his service weapon and ordered Waters "several times" to get down on the ground. Waters refused to comply, however, and Stewart then "got behind [Waters] to try to cuff him up." A struggle ensued, and Waters knocked Stewart's hand away. When Strickland saw Waters reach for his back pocket—where Stewart had previously seen what he thought to be the handgun—he tased Waters [three times[9]]. Waters fell to the ground, and Stewart retrieved the handgun from Waters's pocket and threw it aside. Stewart had only partially handcuffed Waters's hands when his taser lead broke. Stewart eventually completed the handcuffing of Waters.
>
> Stewart then attempted to place Waters in the police vehicle. At that point, Waters "fell in the vehicle head first and began kicking." Stewart, however, eventually secured Waters in the police car.

*Waters*, 697 F. App'x at 762 (internal citations omitted).

"To determine whether a need for force outweighed [Plaintiff]'s Fourth Amendment rights, [the Court] examine[s] each of the three *Graham* factors." *Wilson*, 893 F.3d at 220. Regarding the first

---

[7] Defendants and Plaintiff have also submitted (1) the incident reports prepared by Stewart and Strickland and (2) the use of force form prepared by Strickland. *See* ECF Nos. 140-2, 140-5, 168-1, 168-4, 168-8, 206-2, & 206-5.

[8] Plaintiff did not testify at trial.

[9] Strickland asserts, "I deployed my taser one full five-second burst followed by two bursts that lasted maybe a second or two." Strickland Aff. at ¶ 5.

7

*Graham* factor, it is factually undisputed that Defendants were responding to a report of a fight involving a suspect armed with a handgun who had assaulted somebody and that Plaintiff matched the suspect's description:

> On the evening of March 12, 2015, an anonymous tipster called the Lake City PD to report a fight at the Wedgefield Trailer Park in Lake City. The tipster related that the suspect—who was armed with a handgun—had "no shirt, [a] husky build, [and] short dreads," and had assaulted a person wearing a red shirt. The suspect's lack of a shirt was noteworthy because it was a cold evening. Investigator Stewart accompanied other patrol units, including that of Cpl. Strickland, in responding to the call. While the police officers were en route to Wedgefield, police dispatch reported that the suspect was walking toward Coker Trailer Park, which adjoined Wedgefield.
>
> When Stewart and Strickland arrived at the Coker Park, they saw a man—who turned out to be Waters—fitting the description provided by the tipster.

*Waters*, 697 F. App'x at 761–62 (internal citation omitted); *see* Stewart Aff. at ¶¶ 2–4; Strickland Aff. at ¶¶ 2–4; Dash Cam Audio [ECF No. 206-11] at 0:07–0:15, 0:29–0:31, 1:10–1:14, 1:20–1:22.[10] The Court concludes the first *Graham* factor—"the severity of the underlying offense," *Dolgos*, 884 F.3d

---

[10] In their supplemental motion for summary judgment, Defendants submitted the dash camera video and audio from Strickland's patrol vehicle. *See* ECF No. 206-11. The video does not visually depict Defendants' interaction with Plaintiff, but the recording provides some audio of the events at the arrest scene in Coker Trailer Park. As the Magistrate Judge observes, the audio "at times is very faint and difficult to hear." R & R at p. 4. The Court has carefully listened to the dash cam audio by playing it at a loud volume and using headphones.

Plaintiff filed two motions asking the Court "to make a transcript of the cop car dash cam," *see* ECF Nos. 218 & 223, and he objects to the Magistrate Judge's failure to rule on these motions. Pl.'s Objs. at p. 14. The Court notes a one-page transcript apparently was used in Plaintiff's criminal case. *See United States v. Waters*, at ECF No. 113 (exhibit list). Notably, the Magistrate Judge issued an order in April 2016—nearly three years ago—explaining Plaintiff could seek this transcript from the U.S. Attorney's Office. *See* ECF No. 41. In any event, Plaintiff's *in forma pauperis* status does not cover payment of such a litigation expense by the Court. *See United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."); *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."); *see, e.g.*, *Ashford v. Gordon*, No. 0:13-cv-01113-JFA-PJG, 2013 WL 5495280, at *1 (D.S.C. Oct. 2, 2013) (applying *MacCollom* and *Tabron* in similar circumstances). Accordingly, the Court will deny his motions.

at 180 —weighs in Defendants' favor.[11]

Regarding the second *Graham* factor, it is undisputed that Defendants knew Plaintiff had a gun, was a convicted felon, and was not allowed to possess a handgun. *See* Stewart Aff. at ¶¶ 3–5; Strickland Aff. at ¶¶ 4, 6. Notably, in Plaintiff's criminal case, Judge Hendricks ruled Defendants were lawfully present when "they observed Waters with a handgun," Suppr. Tr. at p. 84; Stewart testified that upon arriving at the scene, he saw the handle of a gun "bulging out of [Plaintiff's] right back pocket" and subsequently removed the gun from Plaintiff's pocket, Trial Tr. at pp. 41–42; Strickland likewise testified Plaintiff had a gun in his back pocket that Stewart removed, *id.* at pp. 71–73; and the jury convicted Plaintiff of being a felon in possession of a firearm (namely, a Hi-Point Model CF .380 caliber pistol). *Id.* at p. 185. Notably, as a matter of law, *Heck* bars Plaintiff from asserting that he was not a felon or that he did not have a gun.[12] *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (explaining "*Heck* prevents [a plaintiff] from prevailing in the § 1983 action on a position incompatible with the conviction"); *see, e.g.*, *Young v. Burke*, No. 2:11-cv-00837-SB, 2012 WL 12898748, at *4 (D.S.C. Aug. 15, 2012) (noting *Heck* precluded the plaintiff—who had been convicted of being a felon in possession of a firearm—from asserting "that he was not in possession of a handgun, as doing so

---

[11] Plaintiff devotes a substantial portion of his objections to his continued argument that no probable cause or reasonable suspicion existed for his detention and arrest. *See, e.g.*, Pl.'s Objs. at pp. 1–5. However, as the Court has already twice explained, *Heck v. Humphrey*, 512 U.S. 477 (1994), bars his unlawful seizure claim "because 'Plaintiff was tried, convicted, and sentenced in this very district court for being a felon in possession of a firearm.'" ECF No. 220 at p. 7 (quoting ECF No. 184 at p. 6); *see also Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir. 2003) ("When evidence derived from an illegal search would have to be suppressed in a criminal case if the judgment in the § 1983 claim were to be applied to the criminal case and the suppression would necessarily invalidate the criminal conviction, the stated principle of *Heck* would apply, and the § 1983 claim would have to be dismissed; there would be no cause of action under § 1983."). The Court will not address this argument further.

[12] The Court previously explained, "*Heck* precludes Plaintiff from asserting he did not have a gun during this struggle, [but] Heck does not totally bar him from raising an excessive force claim." ECF No. 184 at p. 8; *see generally Ewing v. Silvious*, 481 F. App'x 802, 803 (4th Cir. 2012) (explaining an excessive force "claim does not run afoul of *Heck* [if] its success would not invalidate [the plaintiff]'s conviction").

9

would undermine the validity of his conviction"); *Willis v. Wagner*, 2012 WL 4597486, at *3 (N.D. Ill. Sept. 29, 2012) ("Willis's excessive force claim survives *Heck*, <u>at least to the extent that the claim is not premised on the theory that he did not possess a gun</u>." (emphasis added)). Moreover, it is undisputed that Defendants recognized Plaintiff, were familiar with him, and had dealt with him in the past; that Plaintiff had fought with officers including Strickland on prior occasions;[13] and that Stewart knew of Plaintiff's extensive arrest record involving violent crimes. *See* Stewart Aff. at ¶ 5; Strickland Aff. at ¶¶ 4, 6; Arrest Record [ECF No. 206-8]; Suppr. Tr. at p. 47. Based on these undisputed facts, the second *Graham* factor weighs in Defendants' favor because Plaintiff posed an immediate threat to the safety of officers and others,[14] particularly in light of the fact that he illegally had a handgun and met the description of a suspect who had just assaulted somebody.

Regarding the third *Graham* factor, the Magistrate Judge correctly notes it is undisputed that Plaintiff did not raise his hands when Stewart first ordered him to do so. *See* R & R at p. 12. Strickland testified at trial that Stewart "told [Plaintiff] to put his hands up, put his hands up" and that Plaintiff "wouldn't put his hands up." Trial Tr. at p. 71. Plaintiff likewise acknowledges the Magistrate Judge's conclusion "that it is undisputed that Plaintiff failed to put his hands up when first ordered by Stewart." Pl.'s Objs. at p. 4; *see also id.* (conceding "the fact [of] not putting my hands up at first").

Additionally, Plaintiff alleges Defendants "jumped out of the[ir] cars and ran up to me with the[ir] guns pointed at me telling me to get on the ground or they would kill me." Ver. Compl. at p. 3. Stewart similarly avers, "I drew my weapon and shouted for [Plaintiff] to get on the ground several

---

[13] Strickland avers, "[W]e've had to fight [Plaintiff] every time we've dealt with him." Strickland Aff. at ¶ 6. During his testimony at the suppression hearing, Plaintiff acknowledged he had been charged with resisting arrest in 2013 and 2014 at least four times. Suppr. Tr. at p. 80.

[14] The dash cam video shows multiple people present at the scene in Coker Trailer Park.

10

times. He refused and I grabbed him." Stewart Aff. at ¶ 4. Stewart also gave the following testimony at the suppression hearing:

> A: I went over to him, and I drew my weapon and told him to get on the ground. I yelled to him several times, over and over, to get on the ground.
>
> Q: Did he?
>
> A: No, he did not.

Suppr. Tr. at p. 12. And at trial, Stewart testified, "I told the suspect to get on the ground several times. He refused." Trial Tr. at p. 84. In the dash cam audio, Stewart can be heard ordering Plaintiff to get on the ground *at least nine times*. Dash Cam at 1:48–2:08. Significantly, Plaintiff has conceded, "I did not get on the ground when the police first asked me to." ECF No. 222 at p. 7.

The dash cam audio indicates approximately one minute elapses from the last time Stewart yells at Plaintiff to get on the ground to the time Plaintiff is subdued (by tasing and handcuffing) and taken to Strickland's patrol vehicle by Stewart. Dash Cam Audio at 2:06–3:10. Once near the patrol vehicle, Stewart tells Plaintiff, "you got that gun, you don't wanna get on the ground, you'd reached for it, you'd be dead." Dash Cam at 3:10–3:17. Plaintiff then taunts Stewart about how Strickland "*saved*" him (Stewart) by using the taser, saying, "Yea, *that cracker saved you*. You let a cracker save you."[15] *Id.* at 3:18–3:50, 4:41–5:05 (emphases added). Stewart can also be heard saying to another officer, "He got the pistol, I pulled the pistol out." *Id.* at 4:20–4:22. The Supreme Court has explained that "[w]hen

---

[15] The Magistrate Judge concluded this audio "*corroborates* Stewart's and Strickland's testimony that Plaintiff and Stewart were struggling on the ground and Strickland had to use his taser to assist Stewart in subduing and handcuffing him." R & R at p. 12 (emphasis added). To the extent the Magistrate Judge weighed Defendants' testimony or made any credibility determination with this conclusion, the Court respectfully declines to adopt it. *See Jacobs*, 780 F.3d at 569 (explaining a court "cannot weigh the evidence or make credibility determinations" at the summary judgment stage). Rather, *based on the dash cam audio itself*, the Court is not adopting Plaintiff's "version of the facts for purposes of ruling on [the] motion for summary judgment." *Scott*, 550 U.S. at 380.

11

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (involving an excessive force claim). Such is the case here regarding the factual issue of whether Plaintiff was tased because he reached for his gun. Plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could [] believe[] him." *Id.* The Court concludes the third *Graham* factor weighs in Defendants' favor.

The Court is mindful that "[d]eploying a taser is a serious use of force," that a taser "is designed to cause excruciating pain" and "inflicts a painful and frightening blow," and that each taser deployment constitutes a use of force. *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902–03 (4th Cir. 2016) (brackets and ellipsis omitted). Fourth Circuit "precedent . . . makes clear that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." *Id.* at 903. The Court is also mindful that it must "assess the reasonableness of using handcuffs based on the circumstances." *Dolgos*, 884 F.3d at 180; *see id.* ("A lawful arrest does not categorically legitimize binding a person's wrists in chains.").

Here, the incident described above is *not* a situation involving "deploying a taser when the subject is unarmed and there is little risk he could access a weapon," *Armstrong*, 810 F.3d at 904 (internal quotation marks and brackets omitted), or handcuffing a "compliant" subject who was "cooperative and unarmed" and "did not pose a safety threat because she had no weapons." *Dolgos*, 884 F.3d at 181–82. This is also *not* a case involving "[f]iring a taser almost immediately upon arrival at the scene of an altercation, before an officer could have known what was going on." *Armstrong*, 810

12

F.3d at 904 (internal quotation marks and ellipsis omitted). **Rather**, the "circumstances [were] tense, uncertain, and rapidly evolving" and forced Defendants "to make split-second judgments," *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014), "in light of the facts and circumstances confronting" them. *Dolgos*, 884 F.3d at 179. Having viewed the facts in the light most favorable to Plaintiff, the Court finds Defendants' use of force was reasonable in light of all the circumstances. All three *Graham* factors weigh in Defendants' favor, and therefore the Court concludes no reasonable jury could find on these facts that Defendants used excessive force against Plaintiff when he was tased[16] and handcuffed. *See, e.g.*, *Ghazzaoui v. Anne Arundel Cty.*, 659 F. App'x 731, 733 (4th Cir. 2016) ("We conclude that no reasonable jury could find on these facts that Holquist used excessive force against Ghazzaoui."). Accordingly, summary judgment for Defendants is proper on the first excessive force claim.

## II. Second Claim: Use of Force at Jail

### A. Applicable Law

Plaintiff's second excessive force claim involves his arrival at the jail, *after* he was arrested and *while* he was an arrestee/pretrial detainee in Defendants' custody. The Due Process Clause of the Fourteenth Amendment governs this claim. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).[17] "[T]he appropriate standard

---

[16] The Court has assumed Plaintiff was tased four times consistent with the allegations in his verified complaint. The length of the dash cam audio necessarily indicates the taser deployments happened within a matter of seconds during Plaintiff's arrest.

[17] The Court modifies the R & R to reflect that the Fourteenth—not the Fourth—Amendment governs the second claim of excessive force. *See generally Orem*, 523 F.3d at 446 (explaining that "Fourth Amendment protections do not extend to arrestees or pretrial detainees" and that "excessive force claims of a pretrial detainee or arrestee are governed by the Due Process Clause of the Fourteenth Amendment" (brackets omitted)); *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) ("[T]he Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody."), *abrogated by Wilkins*, 559 U.S. at 37; *see, e.g.*, *Orem*, 523 F.3d at 446 ("The point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky. But here, Orem's excessive force claim arises during her transport to [jail], after she was arrested. While she had not been formally charged, her status as an arrestee requires

13

for a pretrial detainee's excessive force claim is solely an objective one," and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," regardless of the officer's state of mind. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016).

"[O]bjective reasonableness turns on the facts and circumstances of each particular case," and a "court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473. A court may consider the following non-exclusive list of factors in determining whether the force was objectively reasonable or not: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.* ("*Kingsley* factors"). "Because the standard is an objective one, the court is not concerned with the officers' motivation or intent. Moreover, it is appropriate to determine whether the force used was objectively reasonable in full context, as a segmented view of the events misses the forest for the trees.'" *Duff v. Potter*, 665 F. App'x 242, 244 (4th Cir. 2016) (internal citation and quotation marks omitted).

**B. Analysis**

Plaintiff alleges that after Strickland drove him to the Lake City Jail, "Stewart came to the car and tryed [*sic*] to pull me out by my cuffs. ***When I pull myself backwards***, he [Stewart] then pulled

---

application of the Fourteenth Amendment to her claim. The district court erred in applying the Fourth Amendment."); *Riley*, 115 F.3d at 1161 (holding the plaintiff's claim "that the officer had used excessive force against [him] while he was at the police station awaiting booking" was "properly analyzed under "the Fourteenth Amendment").

out his taser and shot me in the back of my leg." Ver. Compl. at pp. 4–5 (emphasis added). Plaintiff also submitted a color photograph of the alleged injury to the back of his leg. *See* ECF No. 15 ("[F]ind enclosed a copy of my exhibit 4B the taser marking to the back of my leg."); ECF No. 15-1 (photo).

Defendants have submitted supplemental affidavits denying any such tasing happened at the jail. *See* Stewart Supp. Aff. [ECF No. 206-9]; Strickland Supp. Aff. [ECF No. 206-10]. They aver that Strickland had the only taser at the arrest scene, that Strickland maintained possession of the taser once Plaintiff was transported to the jail, and that Plaintiff could not have been tased again without a new cartridge. *Id.* Defendants also assert that Plaintiff **refused to exit Strickland's car at the sally port of the jail** and that they were eventually able to remove him from the car because he was handcuffed. *Id.*

As the Magistrate Judge recognizes, the parties dispute whether Stewart used a taser at the jail.[18] *See* R & R at p. 18. However, even assuming *arguendo* that Plaintiff was tased at this time, the Court concludes such a use of force would have been "objectively reasonable" based "on the facts and circumstances of [this] particular case." *Kingsley*, 135 S. Ct. at 2473. As indicated above, Plaintiff alleges he "pulled [him]self backwards" when Stewart attempted to pull him out Strickland's car. Ver. Compl. at p. 4. Defendants similarly aver that Plaintiff resisted being taken out the car. *See* Stewart Supp. Aff. at ¶ 5 ("Plaintiff refused to get out of the car, refused directives, and resisted once we arrived at the jail."); Strickland Supp. Aff. at ¶ 4 ("Mr. Waters may have initially jerked away . . . ."). Notably, at the suppression hearing, Stewart described how Plaintiff physically resisted by kicking his feet: "[U]nder the carport, he refused to come out of the car. He was again cursing, **he was kicking his feet**. It took a few minutes for us to get him out of the car." Suppr. Tr. at p. 21 (emphasis added). Thus, it

---

[18] Plaintiff's own sworn statement in his verified complaint confirms he refused to comply with Stewart's efforts to remove him (Plaintiff) from the patrol vehicle because he pulled himself backwards. *See* Ver. Compl. at p. 4.

is undisputed that Plaintiff actively resisted officers' efforts to remove him from the car—though he was handcuffed, he was kicking his feet. Furthermore, Plaintiff's allegations indicate he was tased a single time by being "shot . . . in the back of [his] leg," Ver. Compl. at pp. 4–5, and the photograph of this alleged tasing shows a small blister or abrasion.[19] *See* ECF No. 15-1. Also, as previously mentioned, Plaintiff had fought with officers including Strickland on prior occasions. Supp. Tr. at p. 47.

Having applied the *Kingsley* factors and viewed the evidence in the light most favorable to Plaintiff (including assuming he was tased in the back of the leg while kicking and by his own admission refusing to exit the vehicle by pulling himself backwards), the Court concludes that Defendants' actions—even assuming Plaintiff may have been tased at the jail—were objectively reasonable and that no reasonable jury could find otherwise. *See, e.g.*, *Beale v. Madigan*, 668 F. App'x 448, 449 (4th Cir. 2016) (applying the *Kingsley* factors and concluding that "[v]iewed from this legal lens, in the light most favorable to Beale to the extent supported by the record, we conclude that the officers' actions did not amount to excessive force and that the district court, therefore, properly granted summary judgment to the [d]efendants"). Accordingly, summary judgment for Defendants is proper on the second excessive force claim.

## Conclusion

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS AS MODIFIED** the Magistrate Judge's R & R [ECF No. 228] *to the extent it is consistent with this Order*, **GRANTS** Defendants' supplemental motion for summary judgment [ECF No. 206], and **DISMISSES**

---

[19] Plaintiff alleges he has high blood pressure, *see* Ver. Compl. at p. 12, and he has submitted medical records from the Florence County Detention Center, *see* ECF No. 168-12, but he has not submitted any evidence showing he suffered any additional injury due to the alleged tasing at the jail.

Plaintiff's excessive force claims *with prejudice.*[20]  Having now ruled on all of Plaintiff's claims, the Court **DIRECTS** the Clerk to enter judgment and close this case.

**IT IS SO ORDERED.**

Florence, South Carolina
March 13, 2019

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

---

[20] The Court previously dismissed Plaintiff's § 1983 claims for unlawful seizure and civil conspiracy *without prejudice* pursuant to *Heck*. *See* ECF No. 184 at p. 10.  Additionally, the Court **DENIES** Plaintiff's motions seeking to have the dash cam video/audio transcribed [ECF Nos. 218 & 223] for the reasons explained in Footnote Ten.

17